1   David M Browne, SBN 93576
    23901 Calabasas Road
2   Suite 1064
    Calabasas, CA 91302
3   (818) 591-3800
    (310) 200-0568
4   (818) 225-1064 facsimile
    dmbrownelaw@gmail.com
5
    Attorney for defendant Gateway Fashion Mall
6

7

8                   UNTIED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  MATRIX BUSINESS CONSULTING, )   Case No.: CV 08-01036 GW (CWx)
    INC.                        )
                                )   **DEFENDANT GATEWAY
12              Plaintiff,       )   FASHION MALL'S SETTLEMENT
                                )   CONFERENCE BRIEF**
13  v.                          )
                                )   Date: September 29, 2009
14  BOB BARTON, et al.,          )
                                )   Courtroom: 10
15              Defendants.      )
                                )   Time: 4:00 pm
16                              )
                                )
17                              )
                                )
18

19       Defendant Gateway Fashion Mall has opted to provide its settlement

20  conference brief to the parties herein, and this brief is identical to its confidential

21  brief in this matter.

22

23                   **OVERVIEW OF FACTS AND ISSUES**

24       This is a breach of contract action to recover sums allegedly due on a

25  contract to provide professional services in recovering sums under an insurance

26  policy for a casualty loss. Plaintiff Matrix Business Consulting, Inc. ("Matrix")

27  was retained to provide those services pursuant to a series of contracts entered into

28

    Defendant Gateway Fashion Mall's              - 1 -
    Settlement Conference Brief

1  from May, 2006 to June, 2007.  The key agreement was entered into in December,

2  2006, and was modified slightly by a superseding agreement in June, 2007.

3  The agreement provided for Matrix to receive a contingent fee based on the

4  amount recovered from the insurer for the loss.  However, Matrix was terminated

5  by defendant Gateway during the course of the effort to obtain recovery.  The

6  contract did not limit in any way defendant Gateway's right to terminate Matrix,

7  and the contractual services were not completed under the contingency fee

8  agreement.

9  The cross-action by defendant Gateway Fashion Mall, LLC ("Gateway")

10  states a number of theories, but the only theory that will be presented at trial is its

11  claim to recover fees paid to date to Matrix based on its failure to hold the required

12  licenses to perform the services.  The failure of Matrix to hold the required licenses

13  is a complete defense to the claim it brings, and also entitled defendant Gateway to

14  recover those fees that were in fact paid to it.

15  Defendant Gateway owns and operates a shopping mall located in Bismarck,

16  North Dakota.  The offices for defendant Gateway are in Calabasas, California,

17  from which Gateway's principal operates and manages a number of shopping

18  malls.  Matrix is located in Denver, Colorado.

19  In July, 2005, the mall was damaged by a severe hail storm, which was prior

20  to Gateway purchasing the mall.  The prior owner commenced efforts to recover

21  on its casualty insurance policy for the insured loss.  In connection with Gateway's

22  purchase of the mall, the prior owner assigned to Gateway all rights under the

23  applicable insurance policies, and Gateway took over efforts to recover under the

24  insurance policy for the loss.

25  At that time, Gateway also arranged to hire plaintiff Matrix to represent it in

26  efforts to recover from the insurer amounts due under the insurance policy for the

27  loss. Matrix was acting as a public adjuster, which is a licensed profession that

28

Defendant Gateway Fashion Mall's                    - 2 -
Settlement Conference Brief

permits persons to act in this capacity for a fee. However, Matrix did not hold any of the required licenses to perform these services.

Matrix undertook to investigate and prepare a proof of loss, which was submitted in June, 2006 in the approximate amount of $2,800,000. Matrix undertook to negotiate the loss with the insurer's representatives, and recommended a settlement of the loss in an amount of approximately half of that amount.

Defendant Gateway's principal, Mr. Raymond Arjmand, also had experience adjusting insurance losses, and he sought a second opinion from co-defendant Bob Barton of Barton Consulting ("Barton"). Mr. Barton indicated that the proof of loss prepared by Matrix had significantly understated the amount of damages, and commenced efforts to prepare a second proof of loss. This led to the December, 2006 agreement which is the key agreement in this matter. That agreement was superseded in June, 2007 by another agreement, but it made only minor changes to the December, 2006 agreement.

The agreement was that Gateway would pay 25% of the insurance proceeds recovered to Barton and Matrix, and that Barton was to receive 15% and Matrix was to receive 10%. In addition, the expenses for Gateway's attorneys for the matter were to be paid out of the 25% fee (shared equally by Barton and Matrix), as well as certain consulting expenses incurred to prosecute the proof of loss. Defendant Gateway was to receive 75% of the insurance proceeds, free and clear of the expenses of the adjusters, attorneys and consultants.

The contract is confusing in that it can be read to suggest that Barton receives 25%, and then Matrix received its 10% from that as if it were a subcontractor of Barton. But in practice, the parties treated Matrix as in a direct contractual relationship with defendant Gateway, and the contract should be read in that fashion. No part of the 10% of fees that might be owed to Matrix was ever paid to Barton, and Barton never received funds and then disbursed funds to

Defendant Gateway Fashion Mall's
Settlement Conference Brief

- 3 -

Matrix. Matrix received approximately $90,000 in fees during the course of its work, and those sums were paid either directly by defendant Gateway or from the trust account of its attorneys from the insurance funds paid to Gateway.

In January, 2007, a second proof of loss was then submitted to the insurer in the amount of approximately $12,500,000. However, shortly after that, defendant Gateway observed that in its opinion, Matrix was not adequately performing its duties. The attorneys and Mr. Barton began to undertake essentially all of the work on the matter. Matrix was assigned certain tasks, but in the opinion of defendant Gateway, did not perform them adequately. The initial failure of Matrix in badly underestimating the claim was also a significant problem. The insurer constantly referred to it in resisting the demands pursuant to the second proof of loss. The presence of Matrix on the claim was compromising the claim.

Defendant Gateway terminated Matrix in August, 2007. The efforts to recover sums from the insurer continued for a number of months, and the claim was finally resolved in April, 2008. A final settlement payment of approximately $2,400,000 was negotiated at that time.

The insurer made a number of staged payments from June, 2006 to April, 2008 on the claim. The total amount paid was $7,250,000, and the schedule of payments was as follows:

| Date | Amount |
|---|---|
| 5/5/06 | $    13,500.00 |
| 5/6/06 | 40,500.00 |
| 7/28/06 | 58,184.00 |
| 7/28/06 | 174,552.00 |
| 10/26/06 | 371,834.93 |
| 10/26/06 | 123,944.98 |
| 6/21/07 | 836,712.00 |
| 6/25/07 | 278,904.00 |
| 7/28/07 | 375,000.00 |

| | |
|---|---|
| 9/12/07 | 125,000.00 |
| 10/03/07 | 364,071.29 |
| 10/4/07 | 1,125,000.00 |
| 11/05/07 | 375,000.00 |
| 11/5/07 | 121,356.94 |
| 4/10/08 | 2,149,829.78 |
| 5/15/08 | 716,609.93 |

## MATIX CANNOT COLLET AND FEE, AND MUST FORFEIT FEES
## IT RECEIVED, BECAUSE IT WAS NOT LICENSED

Under California law, a public adjuster must be licensed by the State, and if not, no fee can be recovered. California Insurance Code Sections 15006 and 15007.

Section 15006 in relevant part:

(a) No person shall engage in a business regulated by this chapter, or act or assume to act as, or represent himself or herself to be, a licensee unless he or she is licensed under this chapter.

* * *

(b) Any contract for services regulated by this chapter that is entered into by an insured with any person who is in violation of subdivision (a) may be voided at the option of the insured, and the insured shall not be liable for the payment of any past services rendered, or future services to be rendered, by that person under that contract or otherwise."

Section 15007 in relevant part:

"A public insurance adjuster within the meaning of this chapter is a person who, for compensation, acts on behalf of or aids

in any manner, an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property...."

In addition, any fees actually collected by an unlicensed person can be recovered by someone such as Gateway. North Dakota has a similar statutory scheme. Defendant Gateway believes that California law governs this transaction in that the contract was entered into in this state, and a great deal of the performance of the contract was undertaken in this state. There is no decisional law indicating how a court determines the choice of law question concerning this licensing issue, but defendant Gateway contends that it would be very odd to conclude that California law governs this contract, which it clearly does, but hold that some other jurisdiction's law would govern the licensing requirement. Defendant Gateway maintains it primary business office in California – it is a single purpose entity with only this mall as its sole asset, and it is one of many properties that are owned and managed from California on behalf of the principal, Mr. Raymond Arjmand. The business is managed from California, with the property located in North Dakota.

Matrix was not licensed in either California or North Dakota to act as a public adjuster, and is barred from recovering a fee. It is also liable to return any fees it collected to date from Gateway, which amount to approximately $90,000. Matrix claims that it allegedly did not need a license because is key principal, an individual, is licensed as a public adjuster in California and North Dakota. However, there is no law that indicates that an unlicensed corporation may do business as a public adjuster if it has as a principal an individual that is licensed. Indeed, the applicable laws provide for a corporation to obtain its own license, which would be pointless if unlicensed corporations could do business in this manner. California Insurance Code Section 15010(e). There is also a prohibition

against doing business under a separate name other than the name shown on the license, which would bar Matrix from relying on someone else's license. California Insurance Code Section 15031. There is also a provision for someone located out of state to obtain a license to do business with California insureds. California Insurance Code Section 15017. The form of contract must also be an approved form, which is not the case for the Matrix contract. California Insurance Code Section 15027.

After hearing all of the applicable evidence concerning the contract and it performance, the court at trial will make this key legal determination. Defendant strongly believes that Matrix cannot recover due to this failure to hold the necessary license.

## ANY RECOVERY BY MATRIX IS PURSUANT TO QUANTUM MERUIT BASED ON THE SERVICES THAT IT PARTIALLY PERFORMED UNDER THE CONTRACT

These issues are relevant only if Matrix is able to circumvent its failure to hold the required licenses in order to recover a fee.

Matrix was terminated in August, 2007 while efforts to recover under the policy were still underway, and considerable activity still needed to be performed. As a measure of this activity, the attorneys provided hourly billings for their activity. They ultimately ended up billing and collecting approximately $290,000 in attorneys fees for representation on this matter. The attorneys became heavily involved starting in February, 2007 after the second proof of loss in the amount of $12,500,000 was submitted. They essentially ended up performing a large number of the functions that Matrix would have performed, and that was one of the reasons Matrix was terminated in August, 2007. After Matrix was terminated, they entirely took over its role.

Basically one half of the attorneys fees were incurred for the time period up to the point in time when Matrix was terminated. The other half was incurred after Matrix was terminated. An even smaller percentage of the insurance proceeds had been received as of the August, 2007 termination. This tends to demonstrate that the services performed by Matrix up to the point in time of its termination represented only a fraction of what was required under the contract.

As a matter of law, Matrix could be terminated at any time by defendant Gateway. There is no decisional law concerning the proper method for interpreting public adjuster contracts, and defendant Gateway argues that the appropriate analogy concerning this issue is that for attorneys hired on a contingent fee basis to pursue recovery of claims. The analogy is strikingly apt -- the nature of the services are very similar, and the same public policy concerns should govern.

It is well settled in California that an attorney terminated while performing services under a contingent fee agreement may recover under *quantum meruit* for services actually performed provided that there is a recovery. *Fracasse v. Brent* (1972) 6 Cal.3d 784. In this matter, a series of payments were made by the insurer totaling $7,250,000, and a quantum meruit recovery would provide for some proportion of the recovery of a fee based on Matrix's contribution of time and effort toward the recover of those proceeds.

It is defendant Gateway's position that Matrix performed very little after March, 2007, and that it is not entitled to a fee on funds received after that date. With regard to funds received prior to that date, the payment of approximately $90,000 by defendant Gateway fully compensates it in *quantum meruit* for the services it performed. In addition to these direct payments, sums due to Matrix were paid for attorneys fees and consultant expenses as provided in the agreement. In essence, Matrix has been paid in full (and has in turn paid the expenses it owed) in connection with the approximate $2,200,000 received by defendant Gateway up until the point in time of the termination of Matrix.

Nothing further is therefore owed. To the extent Matrix claims otherwise, it must be based on a showing of its relative contribution to the effort to recover the insurance proceeds up to the point in time that it was terminated. For funds received in 2008 in the approximate amount of $2,400,000 months after Matrix was terminated, it cannot demonstrate any right to any fees.

Part of what has soured settlement discussions is that Matrix has contended without justification that it is entitled to its fee on the entire amount of $7,250,000 paid on the claim. This is cannot establish, and it must show the amount of effort it performed in relation to the overall effort to recover the $7,250,000, and claim a fee as to that proportion.

Of course, this assumes that Matrix manages to establish a right to recovery despite being unlicensed.

Defendant Gateway has offered $50,000 in settlement. The last offer from Matrix was $425,000, which ignores the fact that it has already been paid in full on the first $2,200,000 in recovery, and the dispute concerns what fees it earned on the remaining amount of approximately $5,000,000 paid afterwards. Its net fee of 10%, less fees and consultant expenses that it did not pay after termination, would not be so large even if it had never been terminated.

Dated: September 25, 2009

David M. Browne
Attorney for defendant Gateway
Fashion Mall