David M Browne, SBN 93576
23901 Calabasas Road
Suite 1064
Calabasas, CA 91302
(818) 591-3800
(310) 200-0568
(818) 225-1064 facsimile
dmbrownelaw@gmail.com

Attorney for defendant Gateway Fashion Mall

UNTIED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATRIX BUSINESS CONSULTING, INC.<br><br>Plaintiff,<br><br>v.<br><br>BOB BARTON, et al.,<br><br>Defendants. | Case No.: CV 08-01036 GW (CWx)<br><br>**DEFENDANT GATEWAY FASHION MALL'S PRETRIAL BRIEF**<br><br>Date: November 5, 2009<br>Courtroom: 10<br>Time: 8:30 a.m. |

In accordance with this court's order of September 29, 2009, defendant Gateway Fashion Mall ("Gateway") hereby presents its brief on the issues of the application of the laws of California and North Dakota to the contract in this matter.

In summary, this brief analyzes the following issues and asserts the following conclusions:

1. Whether the court applies California or North Dakota law, both jurisdictions require the plaintiff to be properly licensed to undertake the services pursuant to the contract. Plaintiff admits that it does not have the required license in either California or North Dakota.

Defendant Gateway Fashion Mall's
Pretrial Brief

- 1 -

2. Both jurisdictions provide that the lack of a proper license bars the plaintiff from recovering in this action. This is a result of explicit statutes or as a consequence of the law of illegal contracts, which bars recovery under any legal theory by unlicensed persons whether or not they actually performed services.

3. The proper law to apply to this question is the law of California. These are regulatory statutes governing conduct undertaken in this state; the statutes do not explicitly or impliedly create an exception when the damaged property is located in North Dakota. However, as noted above, the same conclusion should be reached without regard to the choice of law question – both states bar any recovery by plaintiff for its unlicensed activity.

4. On the contractual issues in this matter, California law should be applied.

## OVERVIEW AND FACTUAL BACKGROUND

In July, 2005, the Gateway Fashion Mall in Bismarck, North Dakota, was damaged by a severe hail storm. Thereafter, defendant Gateway purchased the property from its owner at the time of the hail storm, and took an assignment of all rights to recover under the applicable casualty insurance policy that insured the property for this type of loss.

Plaintiff was retained by defendant Gateway to pursue recovery from the insurer for the casualty loss arising from the hail storm. The contract attached to the First Amended Complaint was executed in June, 2007, and it superseded a contract executed by the parties in December, 2006. In reality, it only made a few changes to the contractual language, and the parties fundamentally reached agreement on the contract at issue in December, 2006. Both contracts were negotiated and executed in a similar fashion. At the time each was signed, plaintiff, defendant Gateway and former defendant Bob Barton met at the offices

of the counsel for defendant Gateway to negotiate and execute these contracts. Those offices were in Van Nuys, California.

Plaintiff has earlier executed a contract with defendant Gateway in April, 2006, and any surviving provisions of that contract were expressly incorporated into the December, 2006 contract. It was no longer mentioned as of the superseding contract executed in June, 2007.

To perform the contract, plaintiff had to visit the property in North Dakota, and meet with the numerous consultants in California that were utilized to prepare the proof of claim that was submitted in January, 2007. Thereafter, meetings with the insurer to negotiate the claim were largely conducted in California at the offices of defendant Gateway. Plaintiff also met with defendant Gateway and the consultants on a number of occasions in California after submission of the claim to further pursue the negotiation and settlement of the claim. Plaintiff's principal is a pilot and flew his own plane to these various destinations from his location in Colorado. Indeed, that was one of the grounds plaintiff gave to defendant Gateway as a reason to employ it for this matter – that its principal could fly himself to these various destinations to perform the work.

There were meetings in North Dakota to examine the loss directly with the insurer's representatives, but for the most part, those meetings did not involve any negotiation of the claim. Neither the insurer nor Gateway and plaintiff utilized local consultants in North Dakota. Plaintiff also performed some paperwork out of its office in Denver, Colorado, but for the most part, none of the activities to assist defendant Gateway in negotiating this loss claim occurred in Denver, Colorado.

Plaintiff has admitted that it does not hold a license to perform these activities in either California or North Dakota.

# CALIFORNIA LAW BARS RECOVERY ON THE CONTRACT AT ISSUE IN THIS MATTER

The contract expressly calls for plaintiff to perform services for a fee to negotiate the hail damage claim with the insurers that provided coverage for that loss. The performance of the contract required activities to be performed in both North Dakota, where the property was located, and in California where defendant Gateway is located and also where the insurer had its offices. Negotiations with the insurer were undertaken at the offices of defendant Gateway in Calabasas, California. Most of the consultants utilized by defendant Gateway to demonstrate the scope and nature of the insured loss were also located in California, and meetings regarding that work were undertaken in California. Meetings to inspect and investigate the property were undertaken in North Dakota, but all subsequent meetings were conducted in California.

Under California law, the business undertaken by plaintiff is known as a "public adjuster" and requires a license to be lawfully undertaken. California Insurance Code Sections 15006 and 15007. Section 15006 in relevant part:

> (a) No person shall engage in a business regulated by this chapter, or act or assume to act as, or represent himself or herself to be, a licensee unless he or she is licensed under this chapter.
>
> * * *
>
> (b) Any contract for services regulated by this chapter that is entered into by an insured with any person who is in violation of subdivision (a) may be voided at the option of the insured, and the insured shall not be liable for the payment of any past services rendered, or future services to be rendered, by that person under that contract or otherwise."

Section 15007 in relevant part:

> "A public insurance adjuster within the meaning of this chapter is a person who, for compensation, acts on behalf of or aids in any manner, an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property...."

There is no case law interpreting these statutes as they might apply in this matter. However, plaintiff's contract is plainly one falling within the definitions set forth in these statutes.

Section 15006(b) explicitly states that a contract entered into by an unlicensed person is voided at the option of defendant Gateway. Its answer to the complaint explicitly asserts this defense, and its counterclaim seeks recovery of sums unlawfully collected by plaintiff to date under the illegal contract. Without question, the contract claim is barred under California law, and there is no authority that permits recovery under some alternative theory that would evade the statutory bar of this section.

## NORTH DAKOTA LAW BARS RECOVERY ON THE CONTRACT AT ISSUE IN THIS MATTER

North Dakota also regulates persons seeking to receive fees for representing insureds in negotiating recovery of casualty losses such as the hail storm damage in this matter. Whereas California refers to such persons as "public adjusters," North Dakota identifies them as "insurance consultants." Its relevant statutes provide as follows:

Defendant Gateway Fashion Mall's Pretrial Brief

- 5 -

"26.1-26-02. Definitions. As used in this chapter, unless the context requires otherwise:

\* \* \*

4. "Insurance consultant" means a person that, for a fee, holds oneself or itself out to the public as engaged in the business of offering any advice, counsel, opinion, or service with respect to the benefits, advantages, or disadvantages promised under any insurance policy that could be issued in this state."

"26.1-26-03. License required - Acting as insurance producer or consultant without license prohibited - Penalty. No person may act as or hold oneself out to be an insurance producer, insurance consultant, or surplus lines insurance producer unless licensed under this chapter. A person may not sell, solicit, or negotiate insurance in this state for any class of insurance unless the person is licensed for that line of authority in accordance with this chapter. Any person willfully violating this section is guilty of a class C felony."

"26.1-26-10. Consultant - Exceptions to licensing requirement. A person may not actas an insurance consultant until licensed as such by the commissioner. However, a license as an insurance consultant is not required of:
1. An attorney licensed to practice law in this state acting in the attorney's professionalcapacity.
2. A licensed insurance producer or surplus lines insurance producer.
3. A trust officer of a bank acting in the normal course of the trust officer's employment."

> 4. An actuary or a certified public accountant who provides information, recommendations, advice, or services in the actuary's or the certified public accountant's professional capacity."

There is no decisional law in North Dakota concerning these statutes and their application to this case. However, under the plain wording of these statutes, plaintiff's contract requires it to be licensed in order to perform the services. There is no available exception to this requirement.

Unlike California, North Dakota does not have an explicit statute declaring contracts entered into in violation of these statutes as void. However, North Dakota does have a well-established public policy prohibiting any recovery for services performed under contracts that are illegal under North Dakota law because the plaintiff was required to be licensed, but in fact was not. There is no question that the contract in question, if governed by North Dakota law, would be an illegal contract. Section 26.1-26-03 quoted above indicates that a violation of the prohibition against acting as an insurance consultant without a license is a class C felony.

Moreover, North Dakota law provides generally that contact provisions are unlawful if they are contrary to an express provision of law.

> "9-08-01. Provisions that are unlawful. Any provision of a contract is unlawful if it is:
> 1. Contrary to an express provision of law;
> 2. Contrary to the policy of express law, though not expressly prohibited; or
> 3. Otherwise contrary to good morals."

Defendant Gateway Fashion Mall's
Pretrial Brief

- 7 -

Subsection 1 of this statute applies – the contract is contrary to an express provision of law because it expressly violates Section 26.1-26-10 that is quoted above.

There are no decisions determining the impact of these particular statutes, but there are clearly analogous decisions in North Dakota making it clear that unlicensed persons are barred from recovering for services performed pursuant to their unlawful contracts. Directly relevant is *Preference Personnel, Inc. v. Peterson* (2006) 2006 ND 35, 710 N.W.2d 383. That decision involved a claim by an employment agency to recover its fees for placement of an employee. North Dakota law required it to be licensed, but it did not have a license. As with the applicable statutes involving "insurance consultants" in North Dakota, the statues requiring a license did not explicitly state what effect that would have on a claim for fees by an unlicensed person. But the court made it clear that the claim was nonetheless barred:

> "Although our statutory law does not specifically prohibit the enforcement of a contract between an individual and an unlicensed employment agency, the statutes are clearly intended to provide protection to our citizens by establishing extensive licensing requirements before operating as an employment agency with a physical presence in North Dakota. * * * If public policy considerations require employment agencies to undergo extensive licensing requirements before being allowed to legally conduct business in this State, it follows that it is against the public policy of this State to enforce a contract between an individual and an unlicensed employment agency. Ranta, 391 N.W.2d at 164. To conclude otherwise would undermine the purpose of the licensing requirement."

710 N.W.2d at 385.

Defendant Gateway Fashion Mall's
Pretrial Brief

– 8 –

This decision makes it clear that North Dakota law bars a claim for recovery for services performed by an unlicensed person. Also relevant is the decision cited in *Preference Personnel, Inc. v. Peterson*, which was the decision *Ranta v. McCarney* (1986) 391 N.W.2d 161, 164 ("We therefore hold that an out-of-State attorney who is not licensed to practice law in this State cannot recover compensation for services rendered in the State of North Dakota.")

The business of an insurance consultant is highly analogous to that of an attorney, whose claim was barred in *Ranta v. McCarney*. Both are fiduciaries with the obligation to act strictly for their client – the statutory description of the duties of the insurance consultant sound very similar to the obligations of counsel:

> "26.1-26-35. Duties of consultant - Agreements. An insurance consultant shall serve with objectivity and complete loyalty the interests of the consultant's client alone and to render the client such information, counsel, and service as within the knowledge, understanding, and opinion, in good faith of the licensee, best serves the client's insurance needs and interests."

It would make no sense to fashion a rule for unlicensed insurance consultants different from that for unlicensed attorneys. Both are barred from recovering for services performed while unlicensed.

These decisions are consistent with North Dakota law generally concerning illegal contracts. *Meyer v. Hawkinson* (2001) 2001 ND 78, 626 N.W.2d 262 ("On the basis of public policy, our courts will not enforce contracts deemed injurious to the public or against the public good. Johnson, 438 N.W.2d at 163-64 (indicating that whether a contract is against public policy is generally provided by the state constitution or by statute).")

Defendant Gateway Fashion Mall's
Pretrial Brief

- 9 -

# THE APPLICABLE LAW TO BE APPLIED TO THE CONTRACT IS CALIFORNIA LAW, OR PERHAPS BOTH JURISDICTIONS

The "choice of law" question here is not that typically employed when the interpretation of a contract is in question. Instead, these are statutes exercising the police power of the state, and the question is whether or not they regulate the conduct at issue. Defendant Gateway did not find any explicit authority indicating how the court should decide whether to employ California or North Dakota law for this circumstance, but the question is somewhat moot since the law of both jurisdictions is plainly clear that the unlicensed plaintiff is barred from recovering under its contract.

Nonetheless, the plain language of the statutes strongly suggests that California law applies. California's Insurance Code Section 15007 regulates the following conduct occurring within the state: "A public insurance adjuster within the meaning of this chapter is a person who, for compensation, acts on behalf of or aids in any manner, an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property…" What is being regulated is persons who undertake to represent insureds, which fairly construed regulates persons attempting to conduct this type of business with persons in California for this purpose. The interest of the state of California is to act to regulate those persons who seek to obtain compensation from persons situated in California by acting as public adjusters. Therefore, the facts that are determinative concerning the proper law to apply is that defendant Gateway Fashion Mall maintains its business in Calabasas, California, and plaintiff came into the state and entered into the contract to provide services here in California. Also, the key portion of those services was conducted in California. Essentially all of the negotiations and meetings with the insurer for this loss occurred at the offices of defendant in Calabasas, California. The statute

indicates that the proscribed conduct is acting for compensation "in negotiating for or effecting the settlement of claims" -- that is the regulated conduct. And that conduct occurred in California, thereby subjecting plaintiff's contract to the requirements of California law.

The fact that plaintiff is a non-resident does not alter this analysis. The California statues expressly provide for non-residents to obtain licenses in order to conduct this activity in California. Insurance Code Section 15017. There is nothing in the statutory scheme that suggests that the location of the property in another state prevents application of the statutes to a person seeking to obtain compensation by performing these services in California for a client located in California. Moreover, the language of the statute is focused on conduct in the state that requires a license. It does not reference in any manner that a license is required because the affected property is located in this state. What triggers application of the statute is conduct and not the location of property.

The fact that the location of the property is not determinative can be further demonstrated by the following hypothetical. Reverse the facts so that defendant Gateway is now located out of state, with only the property being located in California. In this circumstance, it is difficult to see how the statute regulates the contract between the public adjuster and the client which is entered into out-of-state, and the conduct to effectuate the settlement occurs out-of-state. The physical location of the property is secondary to the regulated conduct, which is doing business within the state and undertaking services within the state that require a license.

It is also possible that the law of both states governs the licensing requirements since the business being regulated is being conducted in both places. But as argued above, the result is the same without regard to which state's licensing requirement had to be followed for this contract.

# CALIFORNIA LAW GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THE CONTRACT

The choice of law concerning contractual questions in California is governed by Civil Code 1646, which provides:

> "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

Here the contract does not expressly state where it is to be performed, but the method for applying the statute in such circumstances was set forth in *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436 [63 Cal.Rptr.3d 816]. At issue in that action was the proper law to apply to an insurance policy issued in Texas with regard to business activity in California. The court held that "A contract 'indicate[s] a place of performance' within the meaning of section 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *Id*, 153 Cal.App.4th at 1443.

As discussed above, the critical conduct necessary to perform this contract was to be undertaken in California. Most of the meetings necessary to prepare the claim and negotiate a settlement with the insurer took place in California. To reflect that fact, the parties met, negotiated and entered into this contract in California. They did not do so under the belief that the contract was then largely going to be performed outside California.

Accordingly, California law governs the interpretation and enforcement of this contract. Indeed, this fact reinforces the notion that it is California law which also applies in regulating the propriety of the object of the contract. It would make

very little sense to have a contract construed under California choice of law principles, but not subject to the regulation by the California statutes that govern the legality of such contracts.

## CONCLUSION

Under both California and North Dakota law, the plaintiff's failure to be licensed bars its claim under the contract. Determining the proper jurisdiction for applying the law is not particularly important since the result is the same in both jurisdictions.

Dated: October 14, 2009

David M. Browne
Attorney for defendant Gateway Fashion Mall